(89 Misc. Rep. 555)

### PEOPLE ex rel. QUEENS BOROUGH GAS & ELECTRIC CO. v. CONNOLLY, Borough President, et al.

(Supreme Court, Special Term, Queens County. March, 1915.)

1. MUNICIPAL CORPORATIONS ⬳661—"FRANCHISE"—REGULATION.

The right to lay gas mains in the streets, being a "franchise" granted for the service of the public, is subject to regulation in the interest of the public.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1432, 1434–1436; Dec. Dig. ⬳661.

For other definitions, see Words and Phrases, First and Second Series, Franchise.]

2. MUNICIPAL CORPORATIONS ⬤⟹680, 681—LAYING GAS MAINS AND PIPES—
   ISSUANCE OF PERMITS—POWERS.
      The power conferred on the department of water supply, gas, and elec-
   tricity of the city of New York to regulate and control the use and trans-
   mission of gas impliedly carries with it the right to select effective means
   therefor, but does not authorize the department to issue permits to open
   public streets to lay gas mains and pipes, which power rests exclusively
   with the borough president.
      [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1459–1466; Dec. Dig. ⬤⟹680, 681.]

3. MUNICIPAL CORPORATIONS ⬤⟹682 — LAYING OF GAS MAINS — PERMIT TO
   OPEN STREET—RIGHT TO IMPOSE CONDITIONS.
      While a borough president cannot nullify a franchise of a gas company
   by refusing his permit to open streets, he may require that the company,
   as a condition to the issuance of a permit, submit to the control of the de-
   partment of water supply, gas, and electricity, pay for the necessary in-
   spectors, file maps and plans with the department, indemnify the city
   against loss through its negligence, and agree to change and relocate its
   mains, if required.
      [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
   1467–1470; Dec. Dig. ⬤⟹682.]

Motion for mandamus by the People, on the relation of Queens
Borough Gas & Electric Company, against Maurice E. Connolly, as
President of the Borough of Queens, City of New York, and another.
Motion denied.

Davison & Underhill, of Brooklyn (Alfred T. Davison, of Brooklyn,
of counsel), for relator.

Frank L. Polk, Corp. Counsel, of New York City (Edward S.
Malone, of New York City, of counsel), for respondents.

BLACKMAR, J. [1-3] All franchises of public service corpora-
tions are subject to regulation in the interests of the public. The right
to lay gas mains in the streets is a franchise granted for the service
of the public. Many other franchises to use the public streets exist,
and, in addition, the subsurface is used for other municipal purposes.
Under these circumstances we should expect that the Legislature would
delegate to some municipal agency the power to so control the exercise
of the franchise that the mains and pipes may be laid in this mesh of
agencies, using the subsurface of the streets with due regard to the
safety of the public. We find that it has given this power to the de-
partment of water supply, gas, and electricity, hereinafter called the
department, using the words "cognizance and control of the use and
transmission of gas," words which have long been used and have been
interpreted by the courts as conferring full power of regulation and
control. The grant of this power imposes the duty of performance,
and carries with it, by necessary implication, the right to select effective
means therefor. The department is not granted the power to issue
permits to open the public streets to lay gas mains and pipes. This
power rests with the borough president. The department has request-
ed the borough president not to issue the permit until the relator has
agreed to submit to its control, pay for the necessary inspectors, file
maps and plans with the department, indemnify the city against loss

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

through its negligence, and agree to change and relocate its mains if required. The relator refuses to submit to these conditions imposed by the department, the borough president refuses to issue the permit, and the relator asks for a mandamus compelling him so to do.

The borough president cannot nullify the franchise by refusing his permit to open the streets. He can impose reasonable conditions to granting it, and I see no reason why he may not require submission to the control of the department in which the power of·cognizance and control is vested by law. The department in terms requires the relator to accept the conditions of a "permit to open the streets." It is not really a "permit," for it permits nothing, and much of the argument at the bar is wasted on the false issue whether the department could issue a "permit." The department cannot authorize the relator to open the streets. This can be done only by the borough president. But I think that the borough president is justified in withholding his permit until the relator accepts the terms and conditions prescribed by the department, not under which it is to open the street, but under which it is to lay the pipes when the street is opened under the permit of the borough president.

Motion denied.