### BROCKWAY et al. v. CITY OF UTICA.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. MUNICIPAL CORPORATIONS (§ 250*)—CONTRACTS—CONSTRUCTION BY PARTIES.

A contract with a city for the removal of ashes and rubbish from the streets provided that for each failure to so remove the sum of $2 might be deducted by the city engineer from the payments to the contractors, and that the sum should be considered as liquidated damages, and not as a penalty. For many months the engineer made deductions and the contractors accepted payment, without objection. This went on for a long time until a new city administration came in, when the contractors presented claims for the amount deducted, and brought an action therefor. *Held*, that, having assented to the deductions each month, they could not now impugn the decisions of the city engineer, for the city authorities had a right to believe that, when the money was accepted, any controversy over the deductions made was final.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 250.*]

2. MUNICIPAL CORPORATIONS (§ 253*)—CONTRACTS—FAILURE TO ARBITRATE.

Where a contract with a city for the removal of ashes and rubbish from the city streets provided that the city engineer might make certain deductions for each failure of the contractors to comply with their agreement, and that, if they felt aggrieved by the decisions of the engineer, they might appeal to a board whose decision should be final, the decision of the city, engineer was conclusive upon the contractors if they acquiesced in it, and did not appeal.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 253.*]

3. ACCORD AND SATISFACTION (§ 10*)—PART PAYMENT ONLY.

Where a contract with a city for the removal of ashes and rubbish from the city streets provided for certain deductions, the acceptance by the contractors after a controversy over the amounts to be deducted of a payment made after deductions would be an accord and satisfaction.

[Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 66–74; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Oneida County Court.

Action by Boney Brockway and another against the City of Utica. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Reversed and remanded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

William Townsend, for appellant.

P. H. Fitzgerald, for respondents.

SPRING, J. On the 29th day of September, 1906, the plaintiffs as copartners entered into a written agreement with the defendant, whereby they agreed to remove the ashes, rubbish, etc., from the streets of the city. The contract was to continue for the term of five years from October 1, 1906, and the plaintiffs were to be paid for the entire service $53,500, in monthly payments of $891.67.

[1] The contract provided that occupants fronting on streets or alleys should place their material to be removed in receptacles which the contractors were to handle carefully, and, if any were broken or damaged through their carelessness, the amount of such damage was to be deducted from the money their due by the terms of the agreement, and the decision of the city engineer as to the amount of the damage was to be final as to the contractors.

Section 18 of the contract reads as follows:

"It is further understood and agreed that a sum of two dollars ($2.00) may be deducted by the city engineer from the moneys owing or becoming due the contractor for each failure to do the work described above. The above-mentioned two dollars ($2.00) to be the amount deducted for failure to do the work required in each and every individual instance. It is distinctly understood that the sum of two dollars ($2.00) is to be considered as liquidated damages, and in no event as a penalty. If the contractor should feel himself aggrieved by the action of the city engineer in inflicting any of the deductions prescribed in this article, he may appeal to a board consisting of the chairman of the committee on public improvements, the corporation counsel and the president of the common council, and the decision of this board, or a majority thereof, shall be final as to the contractor."

While the contractors were engaged in the work complaints were made from time to time of their failure to fulfill their agreement. These complaints were by the occupants who had placed receptacles in the streets containing ashes, dirt, etc., to be carried away. The manner of procedure in vogue was for the occupant to lodge a complaint with the department of public works, and each charge of dereliction was noted in a complaint book kept in the office for that purpose, and a duplicate of the charge was delivered to the inspector representing the city, who investigated each complaint and returned a written report to the department, which was kept on file. Each month the contractors presented to the commissioner of public works a verified statement for the sum of $891.67. Upon this statement a written indorsement was made of the number of failures, if any, and of what they consisted, and a deduction was made and the warrant prepared for the corrected sum; and upon payment they signed a receipt on the back of the warrant in settlement of the claim. The

first deduction was made for the month of February, 1908, and was for the sum of $34. Some discussion over this charge was had between the plaintiffs and the superintendent of public works. Thereafter each month, including July, 1909, deductions were made by reason of the complaints presented and sustained by the department of public works until they aggregated $152. The plaintiffs accepted the sum paid each month without protest, and did not present any claim to the city until December 30, 1909. The commissioner of public works from time to time called the attention of the plaintiffs to the complaints made, informing them they would be charged for each failure, and they were also occasionally advised by the inspector that he had discovered ashes or rubbish which had not been removed as the contract provided.

The plaintiffs knew each time they received a warrant or draft that their monthly installment was less than the full contract price, and were cognizant of the reason for the deduction. Their acceptance of the money was an acquiescence in the correctness of the deductions made by the department of public works. They understood the mode of procedure obtaining in the department of public works relative to the performance of their contract, of the investigations made of the complaints presented, and of the reports turned in by the inspector. They had ample opportunity to test the correctness of the reports each month. They apparently never impugned their accuracy or truthfulness. They never appeared before the city engineer to present evidence in disparagement of the reports filed, or appealed to the board provided for as final arbiters by section 18 of the contract with the city. They waited until a new administration was to be inducted into the management of the affairs of the city, and then presented their claim. There is no charge now that they were ignorant of the deductions which were made, or that they were misled or fraudulently or improperly induced to accept the money month by month which they receipted for in full settlement, ratifying the counter charges made by the city. Upon the trial the defendant gave evidence tending to establish some of the complaints which had been allowed by the department. The plaintiffs gave evidence in contradiction or explanation, and the jury allowed the full claim of the plaintiffs, which, it is claimed, settled the dispute in their favor.

I think there was no question of fact for the jury. The parties had liquidated the amount to be deducted for each failure to remove ashes and rubbish from the streets. The amount to be deducted from the monthly installment could not be determined until the number of derelictions for that month had been ascertained, and to that extent the counterclaim was unliquidated. The parties had stipulated that the city engineer should make these deductions. The defendant conformed to the method prescribed, and the plaintiffs formally and deliberately assented to the decision made each month. The plaintiffs by this action are not attempting to disaffirm any of the settlements because of any obvious error or clerical mistake in the adjustments. We may assume they satisfied the jury that there were no failures to perform on their part. The city was at the mercy of the plaintiffs

on that question. The city authorities had a right to believe that when the money was accepted by the contractors each month and without any dispute or controversy over the deductions made that the adjustment was final. Twenty-two months had elapsed since the first deduction before the claim was presented. The proofs on the part of the city very likely were not retained, and it would not in all probability be able to identify or establish the charges made. To allow the judgment to stand would be against public policy and would be a dangerous precedent, and the plaintiffs were fairly treated in the adjustments made.

[2] It is not necessary to consider whether the failure of the respondents to appeal to the board of arbitration agreed upon was a condition precedent or bar to recovery in this action. The determination was made and acquiesced in by both of the contracting parties. It was as conclusive, unless appealed from, as if made by the board referred to. The appeal was only to be taken if the contractors were aggrieved. Their conduct indicates they were not aggrieved, but were satisfied with each decision made. If the contractors had formally availed themselves of the remedy set forth in the contract and a hearing had been had and a formal decision rendered by the board, it would be binding upon the contracting parties. The decision made, when acquiesced in, is of like binding force.

[3] If there had been a controversy over the amounts to be deducted each month, the acceptance of the draft for the diminished sum would have been an accord and satisfaction debarring the plaintiffs from recovering. Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785; Genung v. Village of Waverly, 75 App. Div. 610, 77 N. Y. Supp. 581; Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695.

As there was no disagreement, the adjustment made must be deemed to be satisfactory to the plaintiffs, and was ratified and confirmed by the acceptance of the money based upon it. The judgment should be reversed.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.